991 So.2d 1015 (2008)
Kevin Horst KESSLER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1386.
District Court of Appeal of Florida, Fourth District.
October 8, 2008.
*1017 Fred Haddad of Fred Haddad, P.A., Fort Lauderdale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeanine M. Germanwicz, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
The defendant appeals his convictions for trafficking in cocaine and conspiracy to traffic in cocaine. He contends that the trial court erred in admitting into evidence a tape recording of a phone call that he made to his alleged drug source upon the request of law enforcement officers while in custody without adequate Miranda[1] warnings. We agree and reverse.
The defendant was charged by information with trafficking in cocaine and conspiracy to traffic in cocaine. Before trial, he moved to suppress a recorded statement he made to law enforcement officers after he was arrested. Citing Roberts v. State, 874 So.2d 1225 (Fla. 4th DCA 2004), *1018 the defendant asserted that he received inadequate Miranda warnings because he was not advised of his right to have counsel present during questioning. The body of his motion to suppress addressed only his recorded statement, but in the "wherefore clause" the defendant requested that the court suppress "any subsequent evidence directly obtained by law enforcement officers vis-a-vis this illegally obtained statement including, but not limited to, Mr. Kessler's allegedly recorded telephone call to `RAMSES.'"
The trial court granted the defendant's "Motion to Suppress Statements and/or Confessions" in a written order, citing Roberts. The state appealed, and we affirmed the order in State v. Kessler, 919 So.2d 688 (Fla. 4th DCA 2006).
Thereafter, the defendant filed a motion in limine seeking to exclude the tape recording on a controlled phone call he made to his alleged drug source while he was in police custody following his arrest. The motion also sought to exclude the identity of the drug source, as well as any reference to him or to any alleged transactions with him. The motion asserted that this evidence was "fruit of the poisonous tree" because it derived from the defendant's unwarned statements, which were previously suppressed by the trial court. The defendant did not allege in his motion, or argue at the hearing on the motion, that the controlled phone call had already been suppressed by the trial court's prior suppression order and should be excluded based on law of the case.
At the hearing, the evidence showed that after the defendant was arrested for trafficking in cocaine and taken into custody, he was questioned by Detective Floyd Baker. During the course of the questioning, Detective Baker requested the defendant's cooperation in contacting his alleged cocaine supplier. The defendant agreed to contact his source in Miami, whom he identified as "Ramses." The defendant provided the officers with Ramses' phone number and then made phone calls to him. These were recorded by the police with the defendant's consent.
Defense counsel argued to the trial court that the officers obtained the defendant's consent to contact his drug source by exploiting statements that he made during questioning, when he had not been fully advised of his Miranda rights. He urged the court to exclude the recorded phone call from evidence. The state countered that this evidence should not be excluded because the officers knew from an independent source that the defendant had a cocaine supplier and his identity would inevitably have been discovered through their ongoing investigation. The state further argued that the defendant voluntarily agreed to cooperate with law enforcement in making the controlled phone call to his source. According to the state, the controlled phone call was independent of the defendant's statement to the police and thus was not "fruit of the poisonous tree." The trial court denied the motion in limine, agreeing with the state's inevitable discovery argument and determining that, in any event, the defendant's cooperation with the police and controlled phone call were not a result of his unwarned suppressed statement. The court concluded that the defendant's statement was "totally separate and apart" from the defendant's cooperation with the police.
On appeal, the defendant first argues that the trial court violated law of the case principles by allowing the taped phone call to be played for the jury at trial. He contends that the trial court's prior order suppressing his statements, along with our affirmance of that order, required the court to exclude the taped phone call. We do not consider this argument, *1019 however, because the defendant did not raise this law-of-the-case issue sufficiently to preserve it for appeal. To be preserved, an issue must first be presented to the lower court and the specific legal argument argued on appeal must be part of the presentation. Tillman v. State, 471 So.2d 32, 35 (Fla.1985).[2]
Further, even if we were to consider it, we would not reverse on this ground because the record does not clearly show that the trial court's suppression order encompassed the taped phone call to the defendant's cocaine supplier. The law of the case doctrine requires that questions of law actually decided on appeal govern the case in the same court and the trial court through all subsequent stages of the proceedings. State v. McBride, 848 So.2d 287, 289-90 (Fla.2003); Fla. Dep't of Transp. v. Juliano, 801 So.2d 101, 105 (Fla.2001). Here, it is not apparent from the record that the trial court actually suppressed the taped controlled phone call in its "Order Granting Defendant's Motion to Suppress Statements And/Or Confession." The defendant did not mention the taped controlled phone call in the main body of his first motion to suppress, and the trial court's order refers only to the defendant's "statements and confession."
The main thrust of the defendant's argument below on its motion in limine was that the taped phone call should be excluded from evidence because it was "fruit of the poisonous tree," i.e., evidence that derived from a Miranda violation.
The Fifth Amendment's Self-Incrimination Clause provides: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. An analogous provision of our state constitution creates a constitutional right against compelled self-incrimination. Art. I, § 9 of our state Declaration of Rights provides in part that:
[n]o person shall be ... compelled in any criminal matter to be a witness against oneself.
In Miranda, the United States Supreme Court established a procedural safeguard to protect an individual's Fifth Amendment privilege against compelled self-incrimination from the coercive pressures of custodial interrogation. Caso v. State, 524 So.2d 422, 423 (Fla.1988). Miranda requires law enforcement officers to inform suspects of certain fundamental constitutional rights prior to initiating custodial interrogation. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602. The safeguards provided by Miranda are intended to help ensure the voluntariness of statements given by a suspect. They apply only if the suspect is in custody and subject to interrogation. Traylor v. State, 596 So.2d 957 (Fla.1992); Timmons v. State, 961 So.2d 378, 379 (Fla. 4th DCA 2007) (citing State v. Weiss, 935 So.2d 110, 116 (Fla. 4th DCA 2006)). Included among the Miranda rights that a suspect must be advised of is the right to consult with a lawyer before being interrogated and to have the lawyer present during interrogation. Traylor, 596 So.2d at 966 n. 13 (Fla.1992); Roberts.
In this case, it is undisputed that the defendant was in custody and subjected to interrogation at the time of his statements to the police. The trial court determined that the defendant was not fully informed of his Miranda rights before being interrogated because he was not advised that he had the right to have an attorney present during interrogation. *1020 Accordingly, the trial court suppressed his statements to the police. However, the trial court refused to exclude the recorded phone conversation between the defendant and his alleged drug source. The trial court erred in doing so. First, we find no support in the record for the court's conclusion that the drug supplier's identity would inevitably have been discovered without the defendant's unwarned statements. See Fitzpatrick v. State, 900 So.2d 495, 514 (Fla.2005) (holding that for "inevitable discovery" exception to the "fruit of the poisonous tree" doctrine to apply, the state must demonstrate that at the time of the constitutional violation the police already possessed facts which would have led to the evidence notwithstanding the police misconduct). Second, we disagree with the court's reasoning that the controlled call was separate and apart from the defendant's statements to the police. The phone call, which the police solicited while questioning the defendant after he was arrested and placed in custody, was part of the interrogation process.
Interrogation takes place for Miranda purposes "when a person is subjected to express questions, or other words or actions, by a state agent that a reasonable person would conclude are designed to lead to an incriminating response." Traylor, 596 So.2d at 966 nn. 16-17; see also Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (holding that "interrogation" under Miranda includes any statements that the police should know are reasonably likely to elicit an incriminating response); Allred v. State, 622 So.2d 984, 987 (Fla.1993). Under the broad rationale of Miranda, interrogation includes questioning a suspect about his drug supplier and soliciting the suspect's cooperation in securing evidence against the supplier. Such a request by a law enforcement officer constitutes conduct "reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301, 100 S.Ct. 1682.
The record shows that on September 5, 2001 the defendant was arrested at 7:55 p.m., placed a controlled recorded call at the request of the detectives at 8:18 p.m., and gave a taped statement at 8:38 p.m. There were no intervening circumstances that broke the causal relationship between the Miranda violation and the defendant's disclosure of his drug source and consent to contact him by phone. Given the temporal proximity of the arrest, statements, and controlled phone call, and the absence of any intervening circumstances to dissipate any taint arising from the incomplete Miranda warnings, we conclude that the request to reveal the drug source and place a phone call to him constituted custodial interrogation requiring Miranda warnings.
The issue then is the scope of the remedy for the Miranda violation in this case. The defendant argues that the trial court should have suppressed the taped phone conversation as "fruit" of the Miranda violation. The state, citing United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004), argues that the "fruit of the poisonous tree" doctrine does not apply to Miranda violations. However, the state misconstrues Patane. The Patane plurality and concurrence held that the "fruit of the poisonous tree" doctrine does not extend to physical evidence derived from unwarned but voluntary statements. See United States v. Jackson, 506 F.3d 1358, 1361 (11th Cir. 2007) (recognizing, along with several other circuits, this narrow holding of Patane.) According to Patane, the failure to give complete Miranda warnings does not require suppression of physical or non-testimonial evidence derived from the violation. The Supreme Court clarified, *1021 however, that exclusion of testimonial evidence continues to be the proper remedy for a Miranda violation. See Patane, 542 U.S. at 641-42, 124 S.Ct. 2620.[3]
Here, unlike in Patane, the defendant was not seeking to exclude physical evidence produced as the result of a Miranda violation, but, rather, testimonial evidence obtained during the course of his custodial interrogation. The Fifth Amendment privilege protects an accused from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature. Schmerber v. California, 384 U.S. 757, 763, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We consider the defendant's tape recorded conversation with his alleged drug supplier to be an incriminating testimonial communication. See Allred v. State, 622 So.2d 984 (Fla.1993).
In Allred, the Florida Supreme Court held that a DUI suspect's recitation of the alphabet is a testimonial act which requires Miranda warnings. As the court explained, "[t]he content is incriminating evidence out of the suspect's own mouth. The incriminating inference is drawn from the testimonial actanswering the question incorrectly, not from physical evidenceslurred speech." Allred, 622 So.2d at 987. Similarly, the defendant's phone call to his alleged cocaine source is a testimonial act from which an incriminating inference can be drawn. The inference a jury could draw is that the defendant must be involved in cocaine trafficking because he has a cocaine supplier who is readily accessible. The phone call tends to show his knowledge of the drug trade and method of operation.[4]
By permitting the police to record the phone conversation, the defendant furnished incriminating evidence out of his own mouth. The evidence he secured for the state did not just implicate the supplier, but himself as well. This is precisely the type of incriminating testimonial communication which the Miranda rule was designed to address. See Patane, 542 U.S. at 636-37, 124 S.Ct. 2620 (Miranda is a prophylactic rule designed to protect against violation of the privilege against self-incrimination). Accordingly, we hold that the trial court erred in failing to exclude *1022 the taped phone call, because it occurred during custodial interrogation after the defendant was given incomplete Miranda warnings. Further, having examined the entire record, we conclude that admission of the recorded phone call was not harmless. See Caso, 524 So.2d at 425 ("The erroneous admission of statements obtained in violation of Miranda rights is subject to harmless error analysis.").
Reversed and Remanded.
WARNER, J., concurs.
POLEN, J., concurs in result only.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)
[2] The only exception to this principle arises in cases of fundamental error. See Steinhorst v. State, 412 So.2d 332 (Fla.1982). The defendant here has not argued that this error was fundamental.
[3] The Florida Supreme Court has not directly addressed Patane's holding that physical evidence need not be suppressed as a result of an interrogation conducted without Miranda warnings. The question thus remains whether Florida will follow Patane or decline to adopt it as controlling precedent based on independent state constitutional grounds or public policy. See State v. Hoggins, 718 So.2d 761, 767 (Fla. 1998) (noting that state courts have the power to interpret their state constitutions as more protective of individual rights that the federal constitution). We observe that several states have declined to follow Patane because their state constitutions require application of the "fruit of the poisonous tree" doctrine to physical evidence derived from Miranda violations. See State v. Vondehn, 219 Or.App. 492, 184 P.3d 567 (2008); State v. Peterson, 181 Vt. 436, 923 A.2d 585 (2007); State v. Farris, 109 Ohio St.3d 519, 849 N.E.2d 985 (2006); State v. Knapp, 285 Wis.2d 86, 700 N.W.2d 899 (2005); Commonwealth v. Martin, 444 Mass. 213, 827 N.E.2d 198 (2005); State v. Pebria, 85 Hawai'i 171, 938 P.2d 1190 (1997); State v. Smith, 834 S.W.2d 915 (Tenn.1992).
[4] But for such an inference, the relevancy of the controlled phone call would be in doubt. See, e.g., Williams v. Commonwealth, 4 Va. App. 53, 74, 354 S.E.2d 79, 91 (1987) (holding that the defendant's taped phone conversation with his cocaine supplier, made pursuant to his agreement to cooperate with the police, was inadmissible to show the defendant's intent to distribute cocaine; the phone conversation demonstrated only the defendant's intent to cooperate with the police). The defendant did not raise this relevancy issue at trial or on appeal, and we, therefore, cannot consider this point; our reversal rests solely on Miranda.